UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KEVIN L. BLAKE,

    Plaintiff,

v.                                        Case No. 3:23cv21819-LC-HTC

OFFICER SAMMIS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kevin L. Blake, a prisoner proceeding *pro se* and *in forma pauperis*, has filed an amended civil rights complaint under 42 U.S.C. § 1983 relating to an application of chemical agents at Santa Rosa Correctional Institution ("SRCI"). ECF Doc. 6. After reviewing the amended complaint, the undersigned concludes it fails to state a claim against any of the named Defendants and, thus, this case should be dismissed with prejudice. Additionally, the Court has already given Plaintiff an opportunity to amend the complaint and specifically advised Plaintiff in an earlier order, ECF Doc. 5, that his allegations regarding the Defendants do not rise above a claim of negligence and thus are insufficient to support a claim of excessive force. Plaintiff's amended complaint, however, while adding a couple of additional facts, fares no better.

## I.     Background

Plaintiff's amended complaint names six employees of SRCI as Defendants: (1) Officer Sammis; (2) Captain M. Lowe; (3) Lieutenant Catnach; (4) Lieutenant W. Gielow; (5) Officer Lamley; and (6) Officer Jane Doe.  ECF Doc. 6 at 1-3, 14.  The amended complaint contains the following factual allegations, which are accepted as true for purposes of this Report and Recommendation.

On July 16, 2023, wing two of Charlie Dorm was given a standing order due to a few inmates being disruptive.[1]  Between 6:00 p.m. and 7:45 p.m., Plaintiff was standing at the front of his cell reading a book.  Officer Sammis entered the wing and began writing down the cell numbers of inmates he saw being disruptive.  "Noise was coming from the general area around Plaintiff's cell but … Sammis saw that Plaintiff was only standing at his cell front with a book in his hands while the noise continued."

Later, Defendants Lowe, Gielow, Catnach, Sammis, Lamley, and an unknown female officer entered wing two in preparation for a mass use of force.  After seeing Gielow point at his cell, Plaintiff attempted to stop several officers to ask which inmates would be subject to a use of force.  All the officers either ignored him or told him "they didn't know."

---

[1] Plaintiff does not specifically describe the standing order, but based on the allegations in the complaint, it appears the order required inmates to cease any disruptive behavior and warned them that a failure to do so would result in the use of chemical agents.

Between 9:30 p.m. and 10:30 p.m., Lowe authorized the use of chemical agents and the unknown female officer began recording Plaintiff. Lamley prepared the shield and Catnach came to the side of Plaintiff's cell with a can of chemical agents with a hose attached to it. Plaintiff raised his mattress to the cell door and was able to use it to block the chemical agents from hitting his face, but the agents caused a burning sensation on his skin and eyes, as well as coughing and choking. Plaintiff subsequently stated for the camera that he had done nothing to justify the use of force.

Plaintiff received a decontamination shower and a post-use-of-force examination by a nurse. Eventually, Sergeant Benito and Officer Sammis escorted Plaintiff back to his cell. Plaintiff noticed his cell "wasn't properly decontaminated nor was any of his property taken" except his mattress.[2]

On July 17, 2023, Plaintiff asked Benito why he was sprayed with chemical agents the previous day; Benito said Sammis had made a list of all the inmates he saw yelling. Plaintiff told Benito that Sammis "lied on him" because Sammis saw he was not yelling. Plaintiff explained "it wouldn't be logical for him to be yelling on the wing causing a disturbance knowing that it would get him sprayed with chemical agents and placed on property restriction hours before his birthday."

---

[2] Plaintiff does not detail how the cell "wasn't properly decontaminated" or what effect that had on him. Nor does he indicate that any of the Defendants were aware of the condition of the cell.

Later that day, Sammis told Plaintiff he did not witness Plaintiff yelling but "only saw him standing at his cell front while noise was coming from his general area." Sammis offered to give Plaintiff an extra tray of food at dinner "because he caused Plaintiff to get sprayed with chemical agents though he knew [Plaintiff] didn't do anything wrong."[3] Plaintiff believes the offer of an extra tray was a "bribe" to discourage him from filing grievances and a civil rights complaint.

Based on the foregoing, Plaintiff alleges his Eighth Amendment rights were violated by Defendants' use of excessive force, failure to prevent the use of excessive force, and deliberate indifference. As a result, he seeks compensatory and punitive damages.

## II. Legal Standard

Because Plaintiff is a prisoner proceeding *in forma pauperis* and seeking relief from government employees, the Court must dismiss his amended complaint, or any portion thereof, if it determines it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). To state a claim, Plaintiff must plead factual content which allows the Court to draw the

---

[3] In his original complaint, Plaintiff alleged, under penalty of perjury, that Sammis "didn't know for certain who was being disruptive" and, when he spoke with Sammis the day after the use of force, Sammis advised Plaintiff he would receive an extra dinner tray "because of his mistake in causing the Plaintiff to get sprayed with chemical agents." ECF Doc. 1 at 5, 16.

reasonable inference the Defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must liberally construe Plaintiff's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III.  Discussion

####   A.  Defendant Sammis

In Eighth Amendment excessive force claims, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In determining whether force was applied maliciously and sadistically to cause harm, a court considers: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, Plaintiff's allegations suggest Sammis identified Plaintiff for a use of force because Sammis believed he disobeyed the standing order and was being disruptive. Although Plaintiff asserts Sammis "saw that Plaintiff was only standing at his cell front with a book in his hands," he admits that "[n]oise was coming from the general area around [his] cell," and an inmate can create noise in a variety of ways, including by kicking a cell door.[4]

Considering the *Whitley* factors, Plaintiff's allegations do not support an excessive force claim against Sammis. "As a general matter, prison officials are authorized to use force when a prisoner fails to obey an order" and pepper spray "is an accepted non-lethal means of controlling unruly inmates." *Jacoby v. Mack*, 755 F. App'x 888, 898 (11th Cir. 2018) (citation omitted). Plaintiff's allegations suggest Sammis mistakenly believed Plaintiff was being disruptive because he was standing at the front of his cell and noise was coming from the area of his cell. These allegations do not plausibly suggest Sammis' conduct was malicious and sadistic, rather than a good-faith effort to maintain or restore discipline. At worst, Sammis' misidentification was negligent, but negligent conduct does not rise to the level of a constitutional violation. *See Johnson v. Sootsman*, — F.4th —, 2023 WL 5274516, at *9 (6th Cir. Aug. 16, 2023) ("The negligent use of force—even the reckless use

---

[4] This is consistent with Plaintiff's allegation that Sammis later said "he didn't witness Plaintiff yelling on the wing and only saw him standing at his cell front while noise was coming from his general area." ECF Doc. 6 at 15.

Case No. 3:23cv21819-LC-HTC

of force—does not establish an Eighth Amendment claim; [a plaintiff] must prove the malicious use of force for the exclusive purpose to inflict pain."); *Redmond v. Crowther*, 882 F.3d 927, 937 (10th Cir. 2018) ("[A]ccidently deploying force is antithetical to deploying that force maliciously or sadistically.").

Furthermore, other factors indicate force was not used maliciously and sadistically: (1) Plaintiff does not allege he suffered anything more than temporary discomfort from exposure to the chemical agents; (2) prison officials made efforts to temper the severity of the use of force by providing Plaintiff with a decontamination shower and a post-use-of-force examination; and (3) Sammis offered Plaintiff an extra dinner tray following the incident, which does not suggest hostility toward Plaintiff.[5] There are simply no factual allegations from which it can be reasonably inferred that Sammis acted maliciously "for the very purpose of causing harm" to Plaintiff, *Hudson*, 503 U.S. at 6, or which allow an inference of "wantonness in the infliction of pain," *Whitley*, 475 U.S. at 322.

Based on the foregoing, Plaintiff's allegations are not sufficient to nudge his claim that Sammis acted maliciously and sadistically to cause harm "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[5] Although Plaintiff "believes" Sammis offered the extra food as a "bribe," the offer could just as easily be seen as a way of apologizing for an honest mistake.

### B.  Defendants Lowe, Catnach, Gielow, Lamley, and Jane Doe

In addition, Plaintiff's allegations do not support an Eighth Amendment claim against Defendants Lowe, Catnach, Gielow, Lamley, or the Jane Doe. Plaintiff seeks to hold these Defendants liable because they either participated in, or were present during, the application of chemical agents that was initiated by Officer Sammis. However, because Plaintiff's allegations fail to state an excessive force claim against Sammis, the remaining Defendants cannot be held liable for failing to prevent the use of excessive force. *See Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009) (explaining there is "no attendant obligation to intervene" if the other officer's force is not excessive).

Moreover, these Defendants relied on Sammis' identification of Plaintiff as one of the inmates who disobeyed the standing order and was being disruptive. Because they were not subjectively aware Plaintiff had not been disruptive and the use of chemical agents was not justified, they cannot be liable for excessive force, failing to intervene, or deliberate indifference. *See Edrei v. Maguire*, 892 F.3d 525, 534 (2d Cir. 2018) (noting a plaintiff alleging an excessive force claim under the Eighth Amendment must show officers were subjectively aware the force was excessive); *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023) (stating a deliberate indifference claim requires, among other things, that a defendant have subjective knowledge of a risk of serious harm).

Instead, Plaintiff's Eighth Amendment claim against these Defendants appears to be based on their failure to follow certain prison regulations. Specifically, Plaintiff claims regulations: (1) do not permit a standing order to be given to an entire wing; and (2) require officials to use crisis intervention techniques before using force on inmates with mental health conditions. ECF Doc. 6 at 15 ("All of the officials present were aware of the policy and procedures set forth in [Fla. Admin. Code r. 33-602.210] and the captain and lieutenants … had knowledge of Plaintiff's psych grade" but these officials "chose to disregard these factors and proceed with this illegal use of force."). Defendants' failure to comply with prison regulations, however, does not equate to an Eighth Amendment violation in these circumstances. *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (noting prison regulations are "primarily designed to guide correctional officials in the administration of a prison," not "to confer rights on inmates"); *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) ("[F]ailure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence."). Thus, Plaintiff's claims against Defendants Lowe, Catnach, Gielow, Lamley, and the Jane Doe should also be dismissed.

## IV. Conclusion

After Plaintiff filed his original complaint, ECF Doc. 1, the Court issued an order which described the applicable legal standards, advised Plaintiff the complaint

Case No. 3:23cv21819-LC-HTC

failed to state a claim, and gave Plaintiff an opportunity to submit an amended complaint, ECF Doc. 5. Plaintiff's amended complaint, however, continues to suffer from the same deficiencies—namely, the factual allegations indicate Defendant Sammis' conduct was, at worst, negligent, but certainly not malicious and sadistic. Because Plaintiff has failed to state a viable claim against the Defendants and failed to cure the deficiencies identified in the original complaint through amendment, this case should be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Brennan v. Comm'r, Ala. Dep't of Corr.*, 626 F. App'x 939, 945-46 (11th Cir. 2015) ("A *pro se* litigant must be given at least one opportunity to amend his complaint before the court dismisses the action with prejudice if it appears that a more carefully drafted pleading would state a claim upon which relief could be granted.").

Accordingly, it is RECOMMENDED:

1. That this case be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) due to Plaintiff's failure to state a claim on which relief may be granted.

2. That the clerk close the file.

At Pensacola, Florida, this 29th day of September, 2023.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1.

Case No. 3:23cv21819-LC-HTC